UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

Latrice BURNLEY                                                              PLAINTIFF

v.                                          CIVIL ACTION NO. 3:17-CV-769-CRS

CONIFER HEALTH SOLUTIONS
     A/K/A CONIFER REVENUE CYCLES SOLUTIONS, LLC       DEFENDANT

## MEMORANDUM OPINION

This case is before the Court on the Defendant's motion to dismiss Plaintiff Latrice Burnley's complaint.[1] DN 10. Burnley, proceeding *pro se*, filed a complaint against Conifer alleging employment discrimination. DN 1. Specifically, she alleges discrimination on the basis of race as well as retaliation after she filed a discrimination complaint with the Equal Employment Opportunity Commission. DN 1. Burnley applied, and was permitted, to proceed *in forma pauperis*. DN 5, 6. On April 23, 2018, Conifer filed a motion to dismiss, claiming that Burnley had signed an arbitration agreement. DN 10. Burnley did not respond. Then, on September 13, 2018, almost four months later, Bobby Potters, an attorney from Plainfield, Indiana, filed a notice of appearance and a motion for extension of time to respond. DN 11, 12. The motion included no reason or excuse for Burnley's delay. This Court denied the motion, noting the lengthy and unexplained delay and that Potters is not admitted to the bar of this Court nor did he seek admission *pro hac vice*. DN 14. This matter is now ripe for review. For the reasons set forth below, Conifer's motion to dismiss will be granted.

---

[1] In this action, Burnley sued Conifer Health Solutions. Without filing a motion to amend under Federal Rule of Civil Procedure 15, Conifer Revenue Cycles Solutions, LLC has moved to dismiss Plaintiff's complaint based upon its contention than an arbitration agreement bars this action. Since the Defendant has conflated Conifer Health Solutions and Conifer Revenue Cycles Solutions, LLC, the Court considers the Defendant the moving party and refers to both as "Conifer." Regardless, a judgment against a party in its incorrect name can be valid. *Bowles v. Marx Hide & Tallow Co.*, 4 F.R.D. 297 (W.D. Ky. 1945).

Conifer hired Burnley on July 22, 2013, as a Rep Scheduler II. DN 10, Aff of Robert Erny.[2] As part of the hiring process, Burnley reviewed and electronically signed Conifer's employee handbook and arbitration acknowledgment. DN 10, Aff. of Robert Erny. The acknowledgment states:

> Except to the extent that any applicable collective bargaining agreement provided otherwise, I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration of any and all claims and disputes that are related in any way to my employment or the termination of my employment with Conifer. I understand that final and binding arbitration will be the sole and exclusive remedy of any such claim or dispute against Conifer or its parent, subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents, and that, by agreeing to the use of arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process. I also agree that such arbitration will be conducted before an experienced arbitrator chosen by me and the Company, and will be conducted under the Federal Arbitration Act and the procedural rules of the American Arbitration Association ("AAA").
>
> I further acknowledge that in exchange for my agreement to arbitrate, the Company also agrees to submit all claims and disputes it may have with me to final and binding arbitration[.]

DN 10, Ex. A. Burnley electronically signed the agreement using her employee ID number on July 31, 2018. DN. 10, Ex. A.

The Federal Arbitration Act (FAA) "place[s] arbitration agreements upon the same footing as other contracts" and embodies a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25 (1991). Through its enactment, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Put

---

[2] Since Burnley, for the reasons detailed in the order denying her leave to respond, DN 14, was not permitted to respond to the motion to dismiss, the facts unopposed as presented in the motion to dismiss. DN 10.

succinctly, "Congress has thus mandated the enforcement of arbitration agreements" in both federal and state courts. *Id.*

In pertinent part, the FAA states that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, for the FAA's mandate to apply, the agreement must impact interstate commerce and be without grounds for the revocation of a contract. *Southland Corp.*, 465 U.S. at 11.

The FAA is broad, "exercis[ing] Congress' commerce power to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). This power, "[a]t least since 1824," is "plenary." *Southland Corp.*, 465 U.S. at 12. Employment discrimination cases are included within that power. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001).[3] Here, Conifer is clearly involved in interstate commerce, as it has employees and customers in multiple states within the United States. DN 10, Aff. of Robert Erny.

A contractual agreement to arbitrate is governed by general contract law principles. Section 2 of the FAA explicitly reserves "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This includes traditional contract defenses like "fraud, duress, [and] mistake." *Haskins v. Prudential Co. of America*, 230 F.3d 231, 239 (6th Cir. 2000). However, the Sixth Circuit has interpreted this clause to also require that the "arbitral forum permits the effective vindication of [statutory] rights." *McMullen v. Meijer, Inc.*, 355 F.3d 485, 492 (6th Cir. 2004), *citing Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000). For example, one party cannot have "exclusive control over the pool of potential

---

[3] There is an exception to the FAA for "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. However, it is limited to interstate transportation workers. *Circuit City Stores*, 532 U.S. at 114–15. Burnley does not fall within that definition.

arbitrators from which the arbitrator is selected." *McMullen*, 355 F. 3d at 487. Similarly, the arbitration agreement cannot require employees to file a notice and list of witnesses when the company is not so required. *Id.* at 492, *citing Hooters of America v. Phillips*, 173 F.3d 933, 938-39 (4th Cir. 1999).

In this case, there appear to be no impairments preventing the parties from contracting. There was an express exchange of promises to utilize arbitration. DN 10, Ex. A. The arbitration acknowledgment was mutual in its terms, rather than one-sided, and employed fair procedures following the guidelines of the AAA and allowing both parties to participate in the choice of arbitrator. DN 10, Ex. A. Such a mutual agreement also serves as adequate consideration as long as it is not "fatally indefinite" by allowing the company to amend the rules. *Walker v. Ryan's Family Steak House, Inc.*, 400 F.3d 370, 380 (6th Cir. 2005).

The arbitration acknowledgment signed by Burnley falls within the FAA and appears to be a valid contract between her and Conifer. Therefore, the Court will **GRANT** Defendant Conifer Health Solutions's motion to dismiss (DN 10). The Court will dismiss this claim, without prejudice. The Court will enter an order in accordance with this opinion.

September 10, 2018

Charles R. Simpson III, Senior Judge
United States District Court